UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DINORA REYES                                                                    PLAINTIFF

v.                                    Case No. 2:18-CV-02075

USABLE LIFE; and
POLICY NUMBER 50019936-LTD                                                      DEFENDANTS

## OPINION AND ORDER

Before the Court is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as set out in Plaintiff Dinora Reyes's ("Reyes") complaint (Doc. 1). Defendant USAble Life ("USAble") filed an answer (Doc. 7), and the parties submitted a stipulated administrative record under seal (Doc. 9). Reyes filed a motion (Doc. 11) for summary judgment, a statement of facts (Doc. 12), and a brief (Doc. 13) in support. USAble filed a response (Doc. 14). Having considered the parties' respective briefs, the Court finds that Reyes was deprived a full and fair review of her claim because at each stage of the review process, USAble failed to follow the definition of "disability" as written in the policy. The appropriate remedy for this ERISA violation is to remand the case to the plan administrator with instructions to reopen the administrative record.

## I.      Background

Dinora Reyes worked as a Mental Health Professional at Western Arkansas Counseling & Guidance Center, Inc. ("WACGC"). Reyes last worked at WACGC on April 20, 2015. On June 30, 2015, Reyes applied for long-term disability benefits. (Doc. 9-9, p. 593). WACGC sponsors a group policy for long-term disability benefits administered by USAble Life (the "Policy"). Reyes's application represents that she suffered from "severe neck, joint pain, headaches, infection, and fatigue." (Doc. 9-9, p. 593). Reyes first received treatment for these injuries in

1

February 2014 and had been treated by Dr. Donna Shipley, Dr. Robert Fisher, and Dr. Sheharyar Ali.

In support of her application for long-term disability benefits, Reyes submitted three physician's statements by Dr. Shipley, Dr. Fisher, and Dr. Missy Clifton. Each document represented that the doctor had examined Reyes and each physician indicated that Reyes was "totally disabled." Dr. Shipley, Reyes's primary care physician, identified, among other things, Reyes's spinal injury as the primary cause of her disability. Dr. Shipley noted that a fall the previous year had caused Reyes's cervical spine to worsen, and her injury would require additional treatment, including neurosurgery. (Doc. 9-1, p. 173; Doc. 9-9, p. 598). Dr. Shipley did not believe that Reyes's condition would ever improve.

Dr. Clifton, Reyes's dermatologist, noted a skin infection and inflammation which could be treated with oral antibiotics. (Doc. 9-9, p. 597). However, Dr. Clifton determined Reyes was physically impaired due her neck injury and mentally impaired "due to pain." *Id.* Dr. Clifton concluded that Ms. Reyes could not work until she underwent neck surgery. *Id.* Finally, Dr. Fisher, her pain management physician, diagnosed Reyes with a cervical radiculopathy, both physical and mental impairments, and concluded Reyes was totally disabled and could not perform her job duties. (Doc. 9-9, p. 595).

USAble assigned Reyes's claim to Man Ho, a Managed Disability Analyst. (Doc. 9-9, pp. 546-48). Ho obtained medical records, payroll records, and interviewed Reyes over the phone. At the outset of the initial review, Ho obtained a vocational review from Nancy Wiley-Gilpatrick, a Vocational Rehabilitation Counselor. Gilpatrick was to determine "the physical demands of [Reyes's occupation] as it is performed in the national economy." (Doc. 9-9, p. 338). Gilpatrick reviewed the job description for a Mental Health Professional, Reyes's position at the time of her

alleged disability, and determined that Reyes's job was performed at a "sedentary level of physical demand." *Id.*

Ho then contacted Janet Thurston, a registered nurse and independent medical consultant, to evaluate the merits of Reyes's application for benefits.[1]  (Doc. 9-9, pp. 355-59).  Thurston obtained medical records from seven of Reyes's physicians, including Drs. Fisher, Clifton, and Shipley.  (Doc. 9-9, p. 355).  Thurston concluded that Reyes "has multiple and diffuse symptoms reports however there is no clear indication that any condition or combination of conditions result in impairment of function."  (Doc. 9-9, p. 358).  Though Thurston acknowledged the treating physicians' conclusions that Reyes suffered physical and mental impairment, she suggested "[t]here is no medical support for the inability to physically complete prior level of activities on a sustained basis."  (Doc. 9-9, p. 359).  Because her assessment differed from Reyes's physicians, Thurston intended to follow-up with the treating physicians to clarify the treating physicians' findings.  *Id.*

On September 14, 2015, Ho advised Reyes that additional information was necessary before USAble could render a decision.  In response, Reyes provided her notice of award from the Social Security Administration ("SSA") for USAble's consideration.  (Doc. 9-9, pp. 332-36). Thurston reviewed the additional information provided by Reyes and other medical documents but again determined that there was no evidence of Reyes's disability.

On December 7, 2015, Ho sent a letter authored by Thurston to Dr. Shipley.  (Doc. 9-7, pp. 896-98).   In the letter, Thurston acknowledged reviewing Dr. Shipley's physician statement

---

[1] Reyes makes much of a supposed conflict of interest amongst the individuals used to review her application.  Outside of conclusory allegations, Reyes offers no proof to support the existence of a conflict of interest.  There is nothing in the record to indicate Thurston nor any other reviewer was anything other than an independent consultant.

"that advised [Reyes] is incapable of even sedentary activity; has severe mental/nervous impairment and there is never improvement expected." (Doc. 9-7, p. 897). Thurston then outlined her conflicting assessment of Reyes's symptoms and condition. *Id.* Thurston indicated that she was "unable to identify any medical condition which would warrant a functional loss from the work setting on April 21, 2015." (Doc. 9-7, p. 898). At the bottom of the letter, Thurston wrote:

> Our vocational staff have identified her occupation is performed at a sedentary level of physical demand.
> If you are in agreement that Ms. Reyes has the physical capacity for full time sedentary function as of April 21, 2015, please sign and date this letter in the space provided.
> - Per the dictionary of occupational titles, ***sedentary level work*** is defined as exerting up to 10 pounds of force occasionally to lift, carry, push, pull, or move objects. It involves sitting most of the time, but may involve walking or standing for brief period of time.

*Id.* (emphasis in original). USAble required Dr. Shipley to respond to the letter by December 16, 2015. (Doc. 9-7, p. 899).

On December 11, 2015, Reyes advised Ho that Dr. Shipley would not complete the paperwork until Dr. Shipley reexamined Reyes, so Reyes requested an extension until December 30, 2015. (Doc. 9-7, p. 899). Dr. Shipley was no longer Reyes's treating physician at this time because Reyes had moved to Texas. Ho declined to extend the response date. *Id.* Nonetheless, Dr. Shipley signed and returned the letter. (Doc. 9-7, p. 898).

On December 17, 2015, USAble sent Reyes a letter denying her claim for disability benefits. (Doc. 9-7, pp. 883-86). The letter properly outlined the procedures that USAble used in evaluating her claim and detailed the factual basis for the decision as required by the policy. (Doc. 9-7, pp. 883-84; Doc. 9-9, p. 630). The letter noted that "Dr. Shipley confirmed on 12/4/2015 that you have the physical capacity to perform a full-time sedentary function as of 4/21/2105." (Doc. 9-7, p. 884). USAble determined "there are no restrictions or limitations that would preclude [Reyes] from [her] regular employment as a Mental Health Professional." *Id.*

On February 1, 2016, Reyes's attorney notified USAble of Reyes's intention to appeal the first denial of benefits. (Doc. 9-7, pp. 879-80). USAble assigned the appeal to Lindsay Neithercut, an Appeals Analyst. (Doc. 9-5, p. 60). Reyes submitted additional medical support for her claim, and Neithercut obtained additional information from her doctors. Neithercut contacted Dr. Stewart Russell, a consultant board certified in occupational medicine, "to review the file to determine if the insured remains impaired from performing a sedentary physical demand occupation." (Doc. 9-5, p. 70). Dr. Russell reviewed all documents from Thurston's initial review and additional documents provided by Reyes in support of her appeal. Dr. Russell determined "that the insured is not impaired from any of these conditions, alone or in combination, where she would be precluded from performing a full-time sedentary occupation." (Doc. 9-5, p. 74). As a result, on September 15, 2016, USAble informed Reyes that her appeal was denied. (Doc. 9-2, p. 37884).

On November 14, 2016, Reyes sent a letter to USAble appealing the first two denials. (Doc. 9-1, p. 198). Reyes submitted additional documents in support of her appeal. Dr. Russell conducted a second review of Reyes's claim, again "to determine if [Reyes] remains impaired from performing a sedentary physical demand occupation." (Doc. 9-1, p. 76). Dr. Russell concluded "[Reyes] could perform full-time sedentary work as of 4/21/2015." (Doc. 9-1, p. 78). Based on Dr. Russell's review, USAble concluded Reyes was not impaired to the extent that her conditions "would preclude her from performing her regular occupation as of her date of loss." (Doc. 9-1, p. 543). On February 7, 2017, USAble notified Reyes that her claim was denied because she did not meet the policy's definition of disability. (Doc. 9-1, p. 542).

On April 20, 2018, Reyes filed this action appealing the denial of her long-term disability benefits under the policy. Reyes seeks, among other things, an award of benefits retroactive to her application for long-term benefits, continuation of her life insurance coverage, statutory penalties,

and for attorney's fees and costs incurred in the action. In the alternative, Reyes asks that the case be remanded to the case administrator. The parties submitted briefs arguing for and against Reyes's entitlement to benefits in light of the plan administrator's denial of her claim.

## II.  Legal Standard

The burden is on Reyes to show, by a preponderance of the evidence, that she was disabled under the terms of the Policy. *See Biggar v. Prudential Ins. Co. of Am.*, 274 F.Supp.3d 954, 964 (N.D. Cal. 2017). Once a plaintiff in an ERISA action has exhausted her administrative remedies under a benefits plan, a reviewing court's function is to examine the record that was before the administrator of the plan at the time the claim was denied. *Farfalla v. Mut. of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan gives the administrator discretionary authority to determine a participant's eligibility for benefits, the Court reviews the decision for abuse of discretion, and will defer to the determination made by the administrator or fiduciary unless such determination is arbitrary and capricious. *Firestone*, 489 U.S. at 115. Where the plan does not confer discretionary authority on the plan administrator, a court is to review the denial of benefits de novo. *Id.*

"When applying a de novo standard of review in the ERISA context, the role of the court reviewing a denial of benefits is to determine whether the administrator . . . made a correct decision. The administrator's decision is accorded no deference or presumption of correctness." *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 367-68 (6th Cir. 2009) (quoting *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801 (6th Cir. 2002)) (internal quotations omitted); *see also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) ("If de novo review applies, . . . [t]he Court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits.").

6

Under Arkansas Rule 101 of the Arkansas Insurance Department, "[n]o policy, contract, certificate or agreement offered or issued in this State providing for disability income protection coverage may contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract . . . ." Ark. Admin. Code 054.00.101-4. This Rule applies to "all disability income policies issued in this State which are issued or renewed on and after March 1, 2013." Ark. Admin. Code 054.00.101-7; *see also Davis v. Unum Life Ins. Co. of Am.*, 2016 WL 1118258, at *3 (E.D. Ark. Mar. 22, 2016). The policy at issue took effect on February 1, 2014 and replaced all prior polices. (Doc. 9-9, p. 618). Because the policy was issued after March 1, 2013, Rule 101 requires a de novo review.

## III.    Analysis

The relevant definitions within the Policy are reproduced below:

**Disability or Disabled** means you satisfy either the Occupation Test or the Earnings Test as described below. You need only satisfy one Test to be considered disabled.

Occupation Test
1. During the elimination period[2] and the first 24 months of a period of disability, an injury, sickness, or pregnancy requires that you be under the regular care of a physician, and prevents you from performing at least one of the material duties of your regular occupation with reasonable accommodations; and
2. After 24 months of disability payments, an injury, sickness, or pregnancy prevents you from performing at least one of the material duties of any gainful occupation with reasonable accommodations for which your education, training, and experience qualifies you.

If, during the elimination period and the first 24 months of a period of disability, you can perform the material duties of your regular occupation with reasonable accommodation(s), you will not be considered disabled. If, after 24 months of a period of disability, you can perform any gainful occupation for which your education, training, and experience qualifies you, with reasonable

---

[2] The Policy defines the "Elimination Period" as "the number of days during a period of disability that must pass before benefits are payable." (Doc. 9-9, p. 622). The elimination period under this Policy is 90 days. (Doc. 9-9, p. 618).

accommodation(s), you will not be considered disabled. The inability to perform a material duty because of the discontinuation of reasonable accommodation(s) on the part of the employer does not, in itself, constitute disability.

**Material Duty or Material Duties** means the set of tasks or skills required generally by employers from those engaged in an occupation. We will consider one material duty of your regular occupation to be the ability to work for an employer on a full-time basis as defined in the policy.

**Regular Occupation** means the occupation in which you were working immediately prior to becoming disabled.

(Doc. 9-9, pp. 621-24).

Both parties agree that the Occupation Test (the "Test") applies to Reyes's claim. The Court must first determine whether the administrator correctly denied benefits during the initial 24 months of Reyes's alleged disability as provided in section 1 of the Test. If the Court determines the administrator incorrectly denied benefits and finds that Reyes was entitled to benefits for the initial 24 months, the Court must then decide whether Reyes meets the definition of disability under section 2 of the Test.

Under section 1 of the Test, Reyes must demonstrate that an injury or sickness prevented her from performing at least one material duty of her occupation. Reyes identifies a myriad of injuries and sicknesses during the review of her application, including, but not necessarily limited to, severe neck and joint pain, headaches, infections, and fatigue. The Court must decide whether any of her alleged injuries prevented her performing at least one of the material duties of a Mental Health Professional. A material duty is "the set of tasks or skills required generally by employers from those engaged in an occupation." (Doc. 9-9, p. 623). After reviewing each parties' brief and the record before the administrator, it appears neither party has specifically identified any material duty of Reyes's occupation. USAble considered only the physical demands of Reyes's occupation. (Doc. 9-1, p. 543; Doc. 9-5, p. 74; Doc. 9-7, p. 884). In fact, in Thurston's letter to Dr. Shipley, a

crucial piece of evidence in denying Reyes's claim and appeals, Thurston asked Shipley to confirm that "Ms. Reyes has the physical capacity for full time sedentary function." (Doc. 9-7, p. 898). This letter makes no mention of any material duty. Reyes submits that her material duties are outlined in the Dictionary of Occupational Titles ("DOT") job code 045.107-050 for a Mental Health Therapist.[3] (Doc. 13, p. 9). Though a DOT job description may be helpful in the analysis, a more appropriate approach is to identify the tasks and skills WACGC actually required of Reyes's position as dictated by the Policy.

The administrative record includes a WACGC job description, but the Court is mindful that there may be certain functions or duties material to Reyes's job that were not detailed in the job description, or, alternatively, it may include duties that are not material at all.[4] Either way, without sufficient evidence in the record, the Court is left to speculate as to what duties are material to Reyes's regular occupation, and cannot make a finding necessary to the disability analysis. The Court is also unable to determine whether USAble correctly denied Reyes's initial application for benefits because USAble, by failing to identify and consider the material duties of Reyes's occupation, failed to follow the Plan's definition of "disability." The Court finds that this failure denied Reyes of a "full and fair review" she is due under 29 U.S.C. § 1133(2) and has left the administrative record factually incomplete. The appropriate remedy for this ERISA violation is not an award of benefits, but remand with instructions to reopen the administrative record, with this Court to retain jurisdiction over the case until such time as it determines the claim is fully resolved. *See Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1087–88 (8th Cir. 2009)

_____

[3] The Social Security Administration used the DOT code 045.107-050 for a Mental Health Therapist when completing the vocational review for Reyes's social security claim.

[4] The fact that there appears to have been an office reorganization around the time of the Reyes's last day of work further bolsters the Court's uncertainty as to Reyes's material duties. (Doc. 6-1, p. 632-33).

(finding that the appropriate remedy for violation of § 1133(2) is not an award of benefits but to remand the case to the plan administrator); *see also Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) ("Remand is therefore appropriate in a variety of circumstances, particularly where the plan administrator's decision suffers from a procedural defect or the administrative record is factually incomplete.").

On remand, USAble should evaluate Reyes's claim in light of the definition of "disability" as written in the policy. USAble must identify the material duties of a Mental Health Professional, and consideration should be given to each of those duties, not merely the physical demands of Reyes's occupation. Consideration must be given to the terms of the Policy, and the terms of the Policy require such a process. In the event USAble determines that Reyes meets the standard for disability under section 1 of the Test, the administrator must then consider whether she meets the standard for disability under section 2.

## IV.  Attorney's Fees

Reyes also seeks her attorney's fees for this action. The Court has discretion to award reasonable attorney's fees and costs under ERISA. 29 U.S.C. § 1132(g); *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 968 (8th Cir. 2004). In considering whether to award fees and costs, the Court will make use of the nonexhaustive *Westerhaus* guidelines:

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant qeustion [sic] regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

*Sheehan*, 372 F.3d at 968 (citing *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984)).

Though USAble is culpable for the instant dispute, there is no evidence demonstrating that

USAble acted in bad faith. In determining whether Reyes qualified for benefits, USAble failed to correctly apply the definition of "disability" under its own policy. USAble has made no argument that it cannot satisfy an award of fees and costs. An award of fees and costs would not deter plan participants and beneficiaries from asserting their rights and might deter USAble from abandoning its ERISA obligations in the future. Reyes's action here benefits all participants and beneficiaries by holding USAble accountable for departing from the policy's definition of disability. The relative merits of this lawsuit are clearly in Reyes's favor—while it is of course possible that a full and fair review will result in eventual denial of her claim, the administrative record makes clear that she was denied a full and fair review before bringing this action.

In light of these factors, the Court finds that it is appropriate to award Reyes her reasonable fees and costs. The parties may submit briefs on what amount that should be. **Plaintiff's brief is due within 14 days of entry of this order. Any response is due within 7 days of Plaintiff's filing**.

V.     **Conclusion**

IT IS THEREFORE ORDERED that Reyes's motion (Doc. 11) for summary judgment is GRANTED in PART. The motion is granted to the extent it seeks remand to the plan administrator. The motion is otherwise denied. Reyes's claim for benefits is REMANDED to the plan administrator, who is to reopen the administrative record and conduct a new review of Reyes's disability claim consistent with this order. The Clerk is directed to ADMINISTRATIVELY CLOSE this case.

IT IS SO ORDERED this 9th day of April, 2019.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE